# CIRCUIT COURT OF BALTIMORE CITY.

Filed December 16, 1922.

JOSHUA GREEN
VS.
HOWARD FITZCHUE, ET AL., AND CROSS-BILL,
AND
ENON BAPTIST CHURCH, ET AL.,
VS.
JOSHUA GREEN.

*Edward M. Hammond* for plaintiff.

*Benjamin H. McKindless* and *Ephraim Jackson* for defendant.

170

**BOND, CARROLL T., J.—**

When the taking of testimony was started in this case, it appeared to be hardly possible to determine from the available evidence which, if any, of the votes taken at several past meetings fairly registered the congregation's wish on the question in dispute. Therefore, it was decided, with the consent of counsel for the parties, that a vote should be taken at another meeting held under the auspices of the Court. Each faction in the church nominated a minister of another church as a commissioner or judge of election, the two nominees selected a third minister, and an order was passed designating a specified day for the election, within the hours of 9 o'clock in the morning and 9 at night. The election was held by the three commissioners or judges, and they reported to the Court that 371 members of the church voted against the retention of the pastor, Green, and 313 voted for his retention, thus giving a majority of 58 votes against the pastor. This election is now questioned on three grounds:

First—There is evidence to show that in transcribing the names of members from the church books held in Court, to the list used at the election, more than four hundred names which appeared in the books were omitted. It was the intention of the Court that the judges themselves should do the work of transcribing, or, at least, that they should check the work, but the order did not specifically provide this, and because of the shortness of time allowed them, they utilized the lists presented by the two factions, along with lists made by a clerk employed by the neutral judge. This was done, I find, in good faith; and under the actual circumstances it was all that could be done without a postponement of the meeting which had been ordered, after notice had been given for it. The names now listed as omitted in the transfer include those of all dead members, all who have left the church for any reason, all whose names have been changed by marriage, and all whose names have been merely misspelled in one list or the other. This fact renders the list of omissions, to say the least, of uncertain value. Except for the statement of counsel to the contrary, I could not find that after all proper deductions there were any omissions. Counsel say a recheck with deductions made shows a few. It is clear, however, that whatever omissions of names there may have been could not have had any effect on the result of the election. Only twenty-nine of the persons who presented themselves to vote were refused the privilege of voting, and, of course, even if all those who were refused had intended to vote for the pastor (which is not proved), and had so voted, they would not have overcome the majority of 58 against him.

I conclude that no defect in the transcribing of the lists is sufficient to render the results of the election unacceptable as an expression of the wish of the congregation.

In the second place it is contended that the doors were closed, and the taking of votes stopped, too soon, and at a time when many intending voters were waiting in the line outside of the church door. I think, perhaps, there was an oversight in the failure to allow for the fact that some members, especially those who worked out as domestic servants, might not be able to reach the church after their work, and in time to vote before 9 o'clock. The greater part of the evidence shows that the doors were not closed before nine, and that there were not many waiting in line then, if there were members shut out then it is a regretable fact, but one which, I think, cannot be held to vitiate the election. We do not know how many of them would have voted on one side or the other. And merely to get the votes of these latecomers, we should not be justified in putting the church to the trouble and delay of an entirely new election.

A third objection to the election is based on evidence of several of the partisans of the pastor, that in one way or another the judges interfered to obtain votes against him. Some of these witnesses appear so strongly biased that they prevent confidence in their testimony. All these complaints seemed to me to have been rather hard

sought and far fetched. Both factions were represented in the group of judges, all the judges sat together, and together took each vote; and they now all, without exception, agree that the election was fair and properly conducted.

The testimony of improprieties in the vote taking is greatly overbalanced by testimony to the contrary.

These three judges seem to have made every effort to be fair, and to avoid giving any ground for objection. They strike me as admirable, impressive men, entitled to the Court's confidence.

Accepting the evidence of the vote which has been reported, therefore, a decree will be passed against the pastor.